

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY LOUISE VANDERVOORT, individually as an employee,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA SCHOOL BOARD ASSOCIATION, NORTH ALLEGHENY SCHOOL DISTRICT BOARD OF EDUCATION; MELISSA FRIEZ in his/her individual capacity and in his/her official capacity as Superintendent of the NORTH ALLEGHENY SCHOOL DISTRICT; and ANDREW CHOMOS, MARCIE CROW, LIBBY BLACKBURN, KEVIN MAHLER, RICHARD MCCLURE, ALLYSON MITON, SCOTT E. RUSSELL, ELIZABETH M.J. WARNEN, and SHANNON YEAKEL, all in their individual capacities and in their capacities as members of the NORTH ALLEGHENY SCHOOL DISTRICT BOARD OF EDUCATION,<br>Defendants. | CIVIL ACTION NO.: 2:21-cv-1264<br><br>B088   #4   Fee Paid<br>Summons Issued<br><br>FILED<br>SEP 2 2 2021<br>CLERK U.S. DISTRICT COURT<br>WEST. DIST. OF PENNSYLVANIA |

## **COMPLAINT**

Plaintiff , Nancy Louise Vandervoort, individually and as an employee, a sui juris pro se

litigant, without the assistance of an attorney, by exercising of the right to contract and refusal to

CONSENT, am before this Court by Special Appearance and without waiving any rights,

remedies or defenses, statutorily or procedurally, hereby, file this Complaint against Defendants,

Pennsylvania School Board Association, (Assn), North Allegheny School District Board of

Education ("School Board"), Melissa Friez, in her individual capacity and in her official capacity

as Superintendent of the North Allegheny School District; and Andrew Chomos, Marcie Crow,

Libby Blackburn, Kevin Mahler, Richard McClure, Allyson Miton, Scott E. Russell, Elizabeth

M.J. Warnen, Shannon Yeakel, all individually elected officials sued in their individual capacity

and in their capacity as members of the School Board (collectively, "Defendants").  In support of

the claims set forth herein, Plaintiffs allege and avers as follows:

## PARTIES

1.      Plaintiff, Nancy Louise Vandervoort is an adult individual who is a resident and

taxpayer in the North Allegheny School District, in Allegheny County, Pennsylvania.  Plaintiff,

Nancy Louise Vandervoort as an employee.

2.      Defendant, Melissa Friez, a school director member, was at all relevant times the

Superintendent of the North Allegheny School District; in that capacity, acting under color of

law,  responsible for the implementation of all official governmental laws, policies, regulations

and procedures governing the North Allegheny School District.  He/She is sued in his official

and individual personal capacities.

3.      Defendant, Andrew Chomos is a Franklin Park resident, a school director member

of the School Board, sued here in his/her individual and representative capacity. Andrew

Chomos is currently the President of the School Board.

4.      Defendant, Marcie Crow, is a McCandless resident a school director member of

the School Board, sued here in his/her individual, and representative capacity. Marcie Crow is

currently the Vice President of the School Board.

5.      Defendant, Libby Blackburn, is a McCandless resident a school director member

of the School Board, sued here in his/her individual and representative capacity.

6.      Defendant, Kevin Mahler is a McCandless Township resident a school director

member of the School Board, sued here in his/her individual and representative capacity.

7.     Defendant, Richard McClure is a Franklin Park Borough resident a school director member of the School Board, sued here in his/her individual and representative capacity.

8.     Defendant, Allyson Minton is a McCandelss Township resident a school director member of the School Board, sued here in his/her individual and representative capacity.

9.     Defendant, Scoot E. Russell is a McCandelss Township resident a school director member of the School Board, sued here in his/her individual and representative capacity.

10.    Defendant, Elizabeth M.J. Warner is a McCandless resident a school director member of the School Board, sued here in his/her individual and representative capacity.

11.    Defendant, Shannon Yeakel is a McCandless resident school director member of the School Board, sued here in his/her individual and representative capacity.

12.    It all relevant times hereto, the school director members of the School Board and individual Defendants were acting under color of state law

## JURISDICTION AND VENUE

13.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

14.    This Court has subject matter jurisdiction over Plaintiffs 'claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §1367, 28 U.S.C. § 2201, and 42 U.S.C. §1983.

15.    There exists an actual and justiciable controversy between Plaintiffs and Defendant requiring resolution by this Court.

16.    Plaintiffs have no adequate remedy at law.

17.    Venue is proper before the United States District Court for the Western District of Pennsylvania under 28 U.S.C. §1391 because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Plaintiffs 'claims occurred in the Western District of Pennsylvania.

## FACTS

18.  Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

**A.     North Allegheny School District Board of Education**

19.     The North Allegheny School District Board of Education is "composed of nine citizens who are representatives of the residents of Franklin Park, McCandless, Franklin Park Borough, and McCandless Township, Marshal Township, Bradford Woods, Bradford Woods Borough. Elections for school board occur every two years. Five seats up for election and then two years later, four seats are up for election. Terms for all school directors are four years unless there is an unexpired term on the ballot. That seat would be for a two-year term. Board members are elected by district. Only the registered voters of a particular area may vote for a particular seat in a by-district election. North Allegheny School District school board are elected by the registered voters of a particular area and seat in a by-district election. Members appear on the primary ballot as both a Republican and/or a Democrat candidate, but may only circulate a petition on behalf of a party of which he/she is a registered member; a registered member of the other party may circulate a petition for members of that party to request your name be on the ballot

20.     The nine individuals currently serving as large School Board Members are Defendants, Andre Chomos, Marcie Crow, Libby Blackburn, Kevin Mahler, Richard McClure, Allyson Minton, Scott E. Russell, Elizabeth M. J. Warner, Shannon Yeakel.

21.     Defendant, Melissa Friez, Superintendent of the school director member District, holds a Bachelor's degree in English Literature and Psychology, a Master's degree in Secondary English Education, a K-12 Principal Certification and obtained her Doctoral Degree in Administrative and Policy Studies. In accordance with Section 321 of the Pennsylvania Public

School Code of 1949, Ms. Melissa Friez signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge her duties as a school director member to the best of her ability, and with the laws "now in effect and hereafter to be enacted..

22.     Defendant, Andrew Chomos, the President of the school director member School Board, holds a Bachelor's degree in Business and Accounting. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Andrew Chomos signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

23.     Defendant Marcie Crow a school director member of the North Allegheny School District has Bachelor's degree of Science in Elementary Education and a Masters of Education K-12. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Ms. Marcie Crow signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

24.     Defendant Libby Blackburn a school director member of the North Allegheny School District has a degree from Kenyon College. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Ms. Libby Blackburn signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a

school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

25.      Defendant Kevin Mahler a school director member of the North Allegheny School District has undergraduate degree in Sociology and Anthropology and an MBA degree from University of Pittsburgh.   In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Kevin Mahler signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

26.      Defendant Richard McClure a school director member of the North Allegheny School District has undergraduate degree from Geneva College. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Richard McClure signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

27.      Defendant Allyson Minton a school director member of the North Allegheny School District has Bachelor's degree in History and Secondary Education.  In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Ms. Allyson Minton signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

28.     Defendant Scott E. Russell a school director member of the North Allegheny School District has Computer Science degree from Indiana University of Pennsylvania.   In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Scott E. Russell signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

29.     Defendant Elizabeth M. J. Warner, a school director member of the North Allegheny School District has Civil Engineering and Engineering and Public Policy degree and a Masters in Environmental Engineering.   In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Ms. Elizabeth M. J. Warner signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

30.     Defendant, Shannon Yeakel, a school director member of the North Allegheny School District has an undergraduate degree in Regional Planning and a Master in Public Administration.   In accordance with Section 321 of the Pennsylvania School Code of 1949, Ms. Yeakel signed an Oath of Office swearing to support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her/his ability, and in accordance with the laws "now in effect and hereafter to be enacted.

31.     This nine-member School Board appointed Defendant, Melissa Friez to serve as Superintendent of Schools, effective July 1, 2021.

32.     As Superintendent, Mellissa Friez is charged with the administration of the North Allegheny School District.

33.     On July 19, 2021, the NASD sent out an enrollment survey to all parents and guardians to choose between in-person learning or the NASD Cyber Academy.  At that time NO MASKS were required for in-person attendance.  See: **EXHIBIT "A"**.

34.     NASD sent on August 13, 2021 a notice entitled 'Update to NA Health and Safety Plan' which changed to MASKS REQUIRED. See: **EXHIBIT "B"**.  A few days

35.     Plaintiff work at Hosack Elementary School.  On August 17, 2021, attended a staff meeting for day one of three in-service days. After the staff meeting in the School Library, Plaintiff was approached by the Principal Dr. Mathison along with the Para-professional union representative and requested that they speak in the attached computer lab.  Dr. Mathison stated she noticed that Plaintiff did not have nor was wearing a mask then she informed Plaintiff there are no exceptions.  Plaintiff was told to that she **must** either put on a mask/face shield or go home.  Plaintiff politely declined her offer and by saying "no thank you" and that she would leave the work place if she would put in writing that have it that Plaintiff was asked to leave my work place.  Dr. Mathison decline Plaintiff's offer.  The Para-professional union representative stepped and offered Plaintiff a mask which was politely declined.  Dr. Mathison told Plaintiff "you are going to have to go home and I will not put it in writing."  Dr. Mathison then said to Plaintiff she will call and have someone escort her out of the building and that Plaintiff was NOW being insubordinate.  HR refused to except that wearing a mask causes Plaintiff to suffer distress, hyperventilate, headaches, dizziness, anxiety and vertigo becoming unstable to the point

-8-

it may cause Plaintiff me to fall in the halls or stairwells while walking/guiding a student thru their day at school, putting not only herself possibly others in danger or harm way.

36.     Dr. Bradley, the assistant Superintendent of Elementary Education, arrived to speak with me.  He and Plaintiff have a great professional working relationship wherein she explained to him that it was not insubordination, but that I was uncomfortable wearing a mask because it causes her to suffer distress, to hyperventilate, headaches, dizziness, anxiety and vertigo becoming unstable to the point it cause me to fall in the halls or stairwells while walking/guiding a student thru their day at school, putting not only herself possibly others in danger or harm way.   He again mentioned the word insubordination and inquired if Plaintiff wanted to do that instead of going thru a court like setting.  Plaintiff felt as though, even as polite as he was being, it was a faint attempt to coerce and intimidate her into complying with their "required" masking, putting my well-being and health in at risk, which is not law but illegal and unlawful.  The last time I checked the legal definition of "required" as defined by Blacks Law, 4th Ed, page 1468:

> "REQUIRE". To direct, order, demand, instruct, command, claim, compel, request, need, exact.

Nowhere does it say law, statute, code, nor ordinance, lawful or legal. If is their said policy or rules those are not laws either.

37.     Dr. Bradley and Plaintiff walked together to the office wherein and he gave her his cell number to call him when she arrived because he could see that Plaintiff was visibly and was clearly upset.  Plaintiff contacted Dr. Bradley as requested upon her arrival home.  At that time Plaintiff inquired about being insubordinate and Dr. Bradley stated Plaintiff "could not refuse a direct order from a supervisor unless that order could cause you harm or put you in danger.  I replied it would do both.

38.     Plaintiff proceeded on August 17, 2021 to email a letter to the Superintendent Melissa Friez and then later sent the same letter to the nine school board members.  In Plaintiff's she letter explained that masks are ineffective for the purpose claimed by the mandate, were harmful and are only authorized for use by an EUA (emergency use authorization).   See: **EXHIBIT "C"**

39.     On August 19, 2021, NASD notified the parents and staff that "MASK WERE OPTIONAL, yet **Strongly** recommended".  See: **EXHIBIT "D"**.

40.     Shortly thereafter on August 23, 2021 NASD Notified Parents and Staff that MASKS WERE REQUIRED!  See: **EXHIBIT "E"**

41.     Plaintiff attempted to use a few days she acquired to regroup but was later discovered a retaliatory tactic HR purposely marked Plaintiff as unpaid absences. The proceeded to advised Plaintiff she would not be allowed to take any of my twenty-six (26) sick days, which Plaintiff worked, performed and provided a service to acquire.

42.     On August 26, 2021, Plaintiff sent a letter to the HR Director Marianne Treacy, Superintendent and all nine School Board members detailing the sequence of events, outline the harms that it has caused due to their mask mandates.  Plaintiff has been blocked from entering the building, has not been allowed to perform her job nor been paid the monies earned owed and due. See: **EXHIBIT "F"**

43.     Benefits Director Katie Goehring informed Plaintiff that in order for her to be able to use the accrued twenty-six (26) sick days, she worked, performed and provided a service for she needed to be first be approved for FMLA.  Last year they tried to coerce Plaintiff into declaring herself disabled, demanded her entire medical history, then attempted to force her into going to their NASD approved Doctor for authorization.  I told them then and again this year I

have NEVER been unable to perform my work other that a once in a great while sick day. I am not disabled I just can't breathe wearing a mask it could causes Plaintiff to suffer distress, hyperventilate, headaches, dizziness, anxiety, vertigo and become unstable to the point it cause me to fall in the halls or stairwells while walking/guiding a student thru their day at school. See: **EXHIBIT "G"** Plaintiff was forced to complete a FMLA form from my PCP on September 9, 2021.

44.     On September 14, 2021 Katie Goehring, the Benefits Director contacted Plaintiff to ask for additional questions regarding the PCP to determine the FMLA. Ms. Goehring wanted to know what specific Job Duties Plaintiff could not perform due to her diagnosis. Plaintiff was not allowed in the building at ALL! Someone from HR maligned Plaintiff by mentioning to the Nurse at my PCP that wearing a mask is not in my job profile/description. See: **EXHIBIT "H"**. Request for additional information, and **EXHIBIT "I"** job profile. There are not many others job description within the North Allegheny School District which requires mask wearing, a pandemic emergency has not been declared by the Commonwealth, thereby making it is unlawful, are only being imposed because of and for monetary gain.

45.     Plaintiff, now on day twenty-one (21) of unpaid absence and when she inquired as to how long they could keep Plaintiff in this category, for which no response has been received. The actions of Dr. Mathison, Dr. Bradley, Marianne Treacy, Katie Goehring, as subordinates of the Superintendent Melissa Friez and the North Allegheny School Board members are atrocious. Their misdeed are blatant violations of Plaintiff's, Constitutional 5th and 14th Amendment Rights, discriminatory, violates of Plaintiff due process rights, has and deprived Plaintiff's of her in federally protected rights in accordance with 42 U.S.C. §1983, is a violation of Articles 1 § 11, 25 and 26 of the Commonwealth's Constitution as well as uncalled for harassment, coercion,

intimidation, and retaliation, poor treatment toward an employee that has always been in exemplary standing with the Schools and District and is a parent in the community wherein her adult aged children, now 23 and 25, attended school.

**B.      The Masking Requirement Causes Immediate and Irreparable Harm to Students, Staff, and Community.**

46.      In his Affidavit, attached hereto as **Exhibit "J"**, Stephen E. Petty, an expert in the field of Industrial Hygiene who has testified as to the futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19, states the following:

\* \* \*

3.          I hold relevant industry certifications including board certifications as a C.I.H. (Certified Industrial Hygienist), a C.S.P. (Certified Safety Professional), and as a P.E. (Professional Engineer) in six states (Florida, Kentucky, Ohio, Pennsylvania, Texas and West Virginia). My curriculum is attached hereto as **Exhibit i.**

4.          I have served as an expert in personal protective equipment and related disciplines in approximately 400 legal cases. I have often been certified as, and provided testimony as, an expert in these areas. My list of representative cases is attached hereto as **Exhibit ii.**

5.          For example, I am currently serving as an expert in the Monsanto Roundup and 3-M PFAS litigation. Recently I testified in four trials for the DuPont C-8 litigation.

6.          I taught Environmental and Earth Sciences as an adjunct professor at Franklin University.

7.          I hold nine U.S. patents, most related to heating, ventilation and air conditioning (HVAC) systems.

8.          I am a current member in good standing of the following relevant associations: American Industrial Hygiene Association (AIHA), American Board of Industrial Hygiene (ABIH), American Conference of Governmental Ind. Hygienists (ACGIH), American Institute of Chemical Engineers (AIChE), American Society of Refrigeration, Air Conditioning and Refrigeration Engineers (ASHRAE); Member ASHRAE 40 Std. and TC 2.3, and Sigma Xi.

9.        I am an expert in the field of Industrial Hygiene, which is the science and art devoted to the anticipation, recognition, evaluation, and control of those environmental factors or stressors — including viruses — arising in or from the workplace, which may cause sickness, impaired health and well-being, or significant discomfort among workers or among the citizens of the community

10.    Industrial Hygiene is fundamentally concerned the proper methods of mitigating airborne/dermal hazards and pathogens, as well as with the design and use of engineering controls, administrative controls and personal protective equipment, among other things.

11.    Medical doctors, virologists, immunologists, and many public health professionals are not qualified experts in these areas by virtue of those aforementioned credentials.

12.    On May 7, 2021, the Centers for Disease Control (CDC) updated its guidance, providing that the primary mechanism for transmission of Covid-19 is through airborne aerosols, and not, as previously stated, by touching contaminated surfaces or through large respiratory droplets, as also stated during previous periods of the pandemic.

13.    Airborne viral aerosols can consist of a single viral particle or multiple viral particles clumped together, and usually smaller than 5 $\mu$ (microns) in size. By comparison, droplets are >5 $\mu$ to >10 $\mu$ in size.

14.    A square micron is approximately 1/4000th the area of the cross-section of a human hair and 1/88th the diameter of a human hair. Covid particles are —1/10 of a micron or —1/40,000th the area of a cross section of a human hair or — 1/1,000th the diameter of a human hair.

15.    A recent University of Florida study capturing air samples within an enclosed automobile cabin occupied by a Covid-positive individual showed that the only culturable Covid-19 virus samples obtained were between 0.25$\mu$ to 0.5$\mu$ in size. Particles smaller than 5$\mu$ are considered very small and/or very fine or aerosols.

16.    Very small particles do not fall by gravity in the same rate that larger particles do and can stay suspended in still air for a long time, even days to weeks.

17.    Because they stay suspended in concentration in indoor air, very small particles can potentially accumulate and become more concentrated over time indoors if the ventilation is poor.

18.    Very small airborne aerosols pose a particularly great risk of exposure and infection because, since they are so small, they easily reach deep into the lung. This explains in part why Covid-19 is so easily spread, and why so little Covid-19 is required for infection.

19.     Exposure to airborne aerosols is a function of two primary parameters: concentration and time. Less is better regarding both parameters.

20.     For many reasons, personal protective equipment (PPE) is the least desirable way to protect people from very small airborne aerosols. Moreover, masks are not PPE since they cannot be sealed and do not meet the provisions of the Occupational Safety and Health Administration (OSHA) Respiratory Protection Standard (RPS), namely 29 CFR 1910.134.

21.     Regarding PPE, facial coverings do not effectively protect individuals from exposure to very small airborne aerosols. A device referred to as a respirator is required to provide such protection.

22.     The AIHA, in their September 9, 2020 Guidance Document for COVID-19 **(Exhibit iii)** noted that the acceptable relative risk reduction methods must be >90%; mask were shown to be only 10% and 5% (see Exhibit iii - Figure 2) and far below the required 90% level.

23.     Similarly, Shah, et al, 2021 **(Exhibit iv),** using ideally sealed masks and particles 1 micron in size, reported efficiencies for the more commonly used cloth masks and surgical masks of 10% and 12% respectively. No mask can be perfectly sealed, thus "real world" effectiveness would be even lower.

24.     Industrial hygienists refer to a "Hierarchy of Controls" that are typically implemented to minimize exposures, including exposures to very small airborne aerosols like Covid-19.

25.     Regarding practical or "engineering" controls, industrial hygienists focus on practices that dilute, destroy, or contain airborne hazards (or hazards in general).

26.     PPE — especially facial coverings — do not dilute, destroy, or contain airborne hazards. Therefore, facial coverings do not appear anywhere in the Industrial Hygiene (IH) Hierarchy of Controls for very small airborne aerosols like Covid-19. Even respirators (part of the PPE Category and not masks) are in the last priority on the Hierarchy of Controls.

27.     Facial coverings are not comparable to respirators. Leakage occurs around the edges of ordinary facial coverings. Thus, ordinary facial coverings do not provide a reliable level of protection against inhalation of very small airborne particles and are not considered respiratory protection.

28.     For example, during the seasonal forest fires in the summer of 2020, the CDC issued public guidance warning that facial coverings provide no protection against smoke inhalation. That is because facial coverings do    not provide a reliable level of protection against the small particles of ash contained in smoke. Ash particles are substantially larger than Covid-19 aerosolized particles.

29.     I have reviewed the Mayfield City School District (MCSD) "Protective Facial Covering Policy During Pandemic/Endemic Events" as set forth in the Policy Manual of the MCSD Board of Education.

30.     Ordinary facial coverings like the ones required by the MCSD facial covering policy do not meet any of the several key OSHA Respiratory Protection Standards for respirators.

31.     Because of the gaps around the edges of facial coverings required by MCSD's policy, they do not filter out Covid-19 aerosols. The policy stating masks will be worn without gaps defies known science that masks worn today cannot be sealed and always have gaps.

32.     The effectiveness of a cloth facial covering falls to zero when there is a 3% or more open area in the edges around the sides of the facial covering.

33.     Most over-the-counter disposable facial coverings have edge gaps of 10% or more. When adult-sized facial coverings are used by children, edge gaps will usually greatly exceed 10%.

34.     Even short breaks (e.g. to eat) expose individuals to Covid-19 aerosols in indoor spaces.

35.     Ordinary cloth facial coverings like the ones required by the MCSD mask requirement do not provide any filtering benefit relative to particles smaller than 511 if not sealed.

36.     Substantial mitigation of Covid-19 particles could be immediately achieved by:

> a.     opening windows and using fans to draw outdoor air into indoor spaces (diluting the concentration of aerosols),
>
> b.     setting fresh air dampers to maximum opening on HVAC systems,
>
> c.     overriding HVAC energy controls,
>
> d.     increasing the number of times indoor air is recycled,
>
> e.     installing needlepoint ionization technology to HVAC intake fans, and
>
> f.     installing inexpensive ultraviolet germicide devices into HVAC systems.

35.    All of the above-referenced techniques are more effective and meet standard industrial hygiene hierarchy of controls (practices) for controlling exposures in place for nearly 100 years. The use of cloth facial coverings do not fit within these basic hierarchy of controls since masks are not PPE and cannot be sealed. There are no OSHA standards for facial coverings (masks) as respiratory protection.

36.    Extended use of respiratory PPE is not indicated without medical supervision.

37.    As explained in an article titled "Is a Mask That Covers the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of Potential Hazards?" that was published on April 20, 201, in the *International Journal of Environmental Research and Public Health* and that is attached to this Affidavit as **Exhibit iv,** the following negative effects from wearing masks was reported in the literature:

| Increased risk of adverse effects when using masks: | | |
| --- | --- | --- |
| **Internal diseases** | **Psychiatric Illness** | **Neurological Diseases** |
| COPD | Claustrophobia | Migraines and Headache Sufferers |
| Sleep Apnea Syndrome | Panic Disorder | Patients with intracranial Masses |
| advanced renal Failure | Personality Disorders | Epilepsy |
| Obesity | Dementia | |
| Cardiopulmonary Dysfunction | Schizophrenia | |
| Asthma | helpless Patients | |
| | fixed and sedated Patients | |
| | | |
| **Pediatric Diseases** | **ENT Diseases** | **Occupational Health Restrictions** |
| Asthma | Vocal Cord Disorders | moderate heavy physical Work |
| Respiratory diseases | Rhinitis and obstructive | |
| Diseases Cardiopulmonary Diseases | | **Gynecological restrictions** |
| Neuromuscular Diseases | **Dermatological Diseases** | **Pregnant Women** |
| Epilepsy | Acne | |

Figure 5. Diseases/predispositions with significant risks, according to the literature found, when using masks. Indications for weighing up medical mask exemption certificates.

Example statements made in the paper include the following: "The overall possible resulting measurable drop in oxygen saturation (02) of the blood on the one hand and the increase in carbon dioxide (CO2) on the other contribute to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase, in some cases also to a significant blood pressure increase." Exhibit iv, p. 25. In fact, "Neither higher level institutions such as the WHO or the European Centre for Disease Prevention and Control (ECDC) nor national ones, such as the Centers for Disease Control and Prevention, GA, USA (CDC) or the German RKI, substantiate with sound scientific data a positive effect of masks in the public (in terms of a reduced rate of spread of COVID-19 in the population)." Exhibit iv, p. 24. For these reasons, students who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, or damage.

38.    In summary:

-16-

a.      PPE is the least desirable way to protect people from very small airborne aerosols.

b.      Facial coverings as required by the MCSD policy are not recognized as PPE since they cannot be sealed and are not covered by the OSHA RPS.

c.      If PPE were to be used for protection, respirators, not facial coverings as required by the MCSD policy are needed to provide any effective protection from very small airborne aerosols.

d.      Very small aerosol particles are more likely to be a greater cause of disease than respiratory droplets because they can evade PPE and reach deep into the lungs, whereas respiratory droplets have to work against gravity in order to travel up a person's nose into the sinus.

e.      Much better alternatives to controlling exposure are available (i.e., engineering controls of dilution — ventilation with increased fresh air and destruction), and should be used to minimize exposures as opposed to masks.

f.      Individuals who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, and damage due to the overall possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

47.     Plaintiffs note that the Commonwealth of Pennsylvania was given $7,745,724,379 pursuant to the American Rescue Plan ("ARP") Act of 2021 by agreeing to implement the federal guidelines set forth by the CDC for COVID-19 mitigation efforts.  See the attached letter from the U.S. Secretary of Education, attached hereto as **Exhibit "M"**. See also, https://oese.ed.gov/files/2021/08/Pennsylvania-ARP-ESSER-State-Plan-Final.pdf.  .  On September 8, 2021 from Noe Ortega, Ph.D., the Secretary of Education, of Commonwealth of Pennsylvania Department of Education sent a *quid pro quo* threatening letter (in reading it clearly exhibits the mantra 'do as I say or suffer the consequences) attached hereto as **Exhibit "N"**. The letter links to the CDC guidelines available at: https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/operation-strategy.html. The guidelines suggest that a school board

would forfeit ARP allocations by making masks optional, and states that have prohibited mask mandates in schools received letter notifying them that they will not receive ARP funds. Accordingly, it seems Defendants have a financial incentive for implementing the mask mandate, despite such a requirement serves no scientific purpose, and subjects individuals who wear masks to the health risks discussed above.

48.     Plaintiff, Nancy Louise Vandervoort, individually and an employee, is aggrieved by the immediate and irreparable injury, loss, and damage suffered by myself, required to wear a mask pursuant to the School Board's mask mandate, which is not only unsupported by science, but which also results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase

### COUNT I - 42 U.S.C. §1983 - Violation of Procedural Due Process
### (5th and 14th Amendments) Against All Defendants

49.     Plaintiff incorporate the foregoing paragraphs as if set forth in full herein.

50.     In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

51.     In the instant case, Defendants unquestionably acted under the color of state law.

52.     Each individual Defendant is an elected, voting member of the North Allegheny County School District Board of Education with the exception of Melissa Friez who is the Superintendent of the North Allegheny County School District

53.     Under the Fifth Amendment to the Constitution, no person maybe deprived of life, liberty, or property without due process of law. U.S. Const. Ann., Amendment V.

54.     The Fourteenth applies the protections of the Fifth Amendment to state actors. U.S. Const. Ann., Amendment XIV.

55.     Plaintiffs have constitutionally protected interests in the benefits that come from the not being subject to the Board's mask mandate, including the ability to pursue employment without being subjected to health risks that are not offset by any scientifically provable benefits.

56.     Plaintiff was harmed, and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT II - 42 U.S.C. §1983 - Violation of Substantive Due Process (Fourteenth Amendment) — Against All Defendants

57.     Plaintiff incorporate the foregoing paragraphs as if set forth in full herein.

58.     In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

59.     In the instant case, Defendants unquestionably acted under the color of state law.

60.     Each individual Defendant is an elected, voting member of the PSBA and the School District Board of Education with the exception of Defendant Melissa Friez, who is the Superintendent of the North Allegheny School District.

61.     Plaintiff was harmed, and continues to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress

response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase. As well as loss of income

**COUNT III - Violation of Procedural Due Process, Reservation of the People Powers and the Discrimination by Commonwealth and its political subdivisions. (PA Const. Art. I, § 11, 25 & 26) Against All Defendants**

62.    Plaintiff incorporate the foregoing paragraphs as if set forth in full herein.

63.    Article 1, § 11 of the Pennsylvania Constitution provides, " All courts shall be open; and **every man for an injury** done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

64.    Article 1, § 11 of the Pennsylvania Constitution affords the people of Pennsylvania with right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

65.    Article 1, § 25 of the Pennsylvania Constitution affords the people of Pennsylvania with Reservation of powers in people rights to be free from violations and to guard against transgressions of the high powers which have been delegated, and declared that everything is excepted out of the general powers of government and shall forever remain inviolate.

66.    Article 1, § 26 of the Pennsylvania Constitution affords the people of Pennsylvania that people rights have been infringed upon to be free from violations wherein neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

67.     Plaintiffs have constitutionally protected interests in the benefits that come from the not being subject to the Board's mask mandate, including the ability to pursue <u>my employment</u> without being-subjected to health risks that are not offset by any scientifically provable benefits.

68.     Defendants 'implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard, as the Superintendent instituted the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the School Board's own policies and other applicable laws. Such deprivation violates Article 1, §11 of the Pennsylvania Constitution.

69.     Plaintiff were harmed, and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

**COUNT IV - Violation of Substantive Due Process, Reservation of the People Powers and the Discrimination by Commonwealth and its political subdivisions.**
**(PA Const. Art. I, § 11, 25 & 26) Against All Defendants**

70.     Plaintiff incorporate the foregoing paragraphs as if set forth in full herein.

71.     Article 1, § 11 of the Pennsylvania Constitution provides, " All courts shall be open; and **every man for an injury** done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

72.     Article 1, § 11 of the Pennsylvania  Constitution affords the people of Pennsylvania with right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

73.     Under Article 1, § 11 of the Pennsylvania Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

74.     Article 1, § 25 of the Pennsylvania Constitution affords the people of Pennsylvania with Reservation of powers in people rights to be free from violations and to guard against transgressions of the high powers which have been delegated, and declared that everything is excepted out of the general powers of government and shall forever remain inviolate.

75.     Article 1, § 26 of the Pennsylvania Constitution affords the people of Pennsylvania that people rights have been infringed upon to be free from violations wherein neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

76.     Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

**RESERVATION OF RIGHTS**

Plaintiffs herein expressly reserve their rights in regards to any additional claims to which they may be entitled under federal law as well as under the laws of the Commonwealth of Pennsylvania, including claims arising from any violations of Pennsylvania's Open Meetings Laws or other actions of misconduct that may have been committed by Defendants. Plaintiffs expressly place Defendants on notice of Plaintiffs 'intention to initiate removal proceedings at the state court level against Defendants as a result of the infractions Defendants have committed, as described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a.   Assume jurisdiction of this action;

b.   Vacate and set aside the Defendants 'mask mandate as well as any other action taken by Defendants to institute the mask mandate and implement the provisions of the mask policy;

c.   Declare that the Defendants 'masking policy is void and without legal force or effect;

c.   Declare that the institution of the mask policy and actions taken by Defendants to implement the mask policy are arbitrary, capricious, based on ignorance due to failure to inquire into facts, otherwise not in accordance with law, and without observance of required procedures;

d.   Declare that the mask policy and the actions taken by Defendants to implement the mask policy are in violation of the Constitution and contrary to the laws of the United States and the Commonwealth of Pennsylvania;

e.   Temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing the mask policy and from taking any other action to implement the masking policy that is not in compliance with applicable law; and

f.   Grant such other and further relief as may be just, equitable, and proper including without limitation, an award of attorneys 'fees and costs to Plaintiffs.

Respectfully submitted this 22nd day of September, 2021.

Respectfully Presented,

**All Rights Reserved, Without Prejudice & Without Recourse**

/s/ _____

Nancy Louise Vandervoort, *sui juris pro se*
1500 LaPlace Pt. Ct.
Sewickley, PA 15143
Telephone: 412-874-0691
Nancy Louise Vandervoort, individually and employee

-24-