IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY LOUISE VANDERVOORT,
*individually as an employee,*

         *Plaintiff,*

   v.

PENNSYLVANIA SCHOOL BOARD
ASSOCIATION, *et al,*

         *Defendants.*

Civil Action No. 2:21-cv-1264

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

    *Pro se* Plaintiff Nancy Louise Vandervoort ("Vandervoort"), a para-educator in the North Allegheny School District ("School District"), brought this action seeking equitable, compensatory, and punitive damages for alleged violations of her rights under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1967 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Pennsylvania Constitution. Her allegations arise from the School District's universal masking mandate in response to the COVID-19 pandemic and how it affected her ability to perform her job.  (ECF No. 17). Defendants North Allegheny School District Board of Education ("School Board"), North Allegheny School District ("School District"), Melissa Friez (the Superintendent of the School District) ("Dr. Friez"), and the School Board members - Andrew Chomos, Marcie Crow, Libby Blackburn, Kevin Mahler, Richard McClure, Allyson Miton, Scott E. Russell, Elizabeth M.J. Warnen, and Shannon Yeakel - (collectively, "School Defendants") filed a Motion to Dismiss pursuant to Fed R. Civ. P. 12(b)(6) for Failure to State a claim, along with a supporting brief.

1

(ECF Nos. 18 and 19).  Briefing has concluded and the motion is ripe for adjudication.  For the following reasons, School Defendants' motion will be granted.

## I.  STANDARD OF REVIEW

### A.  *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring).  If a court can reasonably read the pleadings to state a valid claim on which a plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364, 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969).  But even under this less stringent standard, a *pro se* complaint is still subject to dismissal. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.  Rule 12(b)(6) Motions

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008).  Although a court must accept the

allegations in a complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## II.   FACTUAL ALLEGATIONS

Vandervoort is employed as a Special Assistant II-C in Hosack Elementary School within the School District. She is also a resident and taxpayer of the School District. (ECF No. 17, ¶¶ 1-2). According to Vandervoort, she initially "complied with the request of wearing a non-prescribed EUA medical device due to the fear mongering of the Anthony Fauci, media, and news outlets." (*Id.* ¶ 50).

### A. Masking Mandates in the School District

On June 17, 2021, the school superintendent, Dr. Friez, sent a district-wide email to parents concerning the District's Health and Safety and Education Plans for the 2021-2022 School Year (Health and Safety Plan) stating that "NASD will not require face coverings on

school campuses." (ECF 17-1).  At a June 23, 2021 meeting, the School Board voted to approve the June 16, 2021 Health and Safety Plan that included a no masking policy.[1]

On August 13, 2021, Dr. Friez made an update to the Health and Safety Plan and sent an email to School District parents that said, "In order to honor the commitment to five days of in-person instruction and the need for our students to return to school to a safe environment with as few interruptions as possible, **NASD will require face coverings indoors for students, staff, and visitors for grades K-12 beginning Monday, August 16.**" (ECF No. 1, at ⁋ 79) (ECF No. 17-2) (emphasis in original).  At the August 18, 2021 meeting of the School Board, it voted to change the August 13, 2021 update to the Health and Safety Plan, and eliminate the universal masking mandate.

A lawsuit was filed in this Court on August 22, 2021, seeking a Temporary Restraining Order to reinstate the Health and Safety Plan's August 13, 2021 update that required universal masking in the School District.  (Civil Action No. 2:21-cv-01112, ECF Nos. 1 and 2).  On August 23, 2021, Judge Horan issued a Temporary Restraining Order that returned the School District to a state of universal masking. (Civil Action No. 2:21-cv-01112, ECF No. 9, at p. 3).

Subsequently, on August 31, 2021, the Acting Secretary of the Pennsylvania Department of Health ("PADOH") entered an Order with an effective date of September 7, 2021, requiring the wearing of face coverings for all K-12 public school districts in the Commonwealth.  At a

---

[1] The Court's facts are informed by the cases at Civil Action No. 2:21-cv-01112 and Civil Action No. 2:22-cv-00055 before United States District Judge Marilyn J. Horan, which stem from the School Board's decisions on masking policies within the School District.  The Court may take judicial notice of information that is not subject to reasonable dispute because it is either "generally known within the trial court's territorial jurisdiction" or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  It may consider the public docket sheets for the cases pending before Judge Horan.  *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("[D]ocket sheets are public records[ ] of which this court may take judicial notice in deciding a motion to dismiss.").

September 22, 2021 meeting, the School District rescinded its action of August 18, 2021, and adopted a policy requiring masks to be worn indoors even after the PADOH Order was lifted for students, staff, and visitors while Allegheny County was in a substantial or high category for community transmission/spread. (*See* Civil Action No. 2:22-cv-00055, ECF No. 15, at pp. 4-5).

On December 8, 2021, the Pennsylvania Supreme Court held that the PADOH lacked the authority to enter its August 31, 2021 Order (with an effective date of September 7, 2021), requiring the wearing of "face coverings" while indoors, "regardless of vaccination status," for all K-12 public school districts in the Commonwealth of Pennsylvania. *See Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452 (Pa. 2021). That same day, the School Board voted to reverse the School District's Health and Safety Plan, and masking was set to become optional on January 18, 2022. (Civil Action No. 2:22-cv-00055, ECF No. 16, pp. 4-5).

Another lawsuit was filed in this Court at Civil Action No. 2:22-cv-00055, and Judge Horan issued a Temporary Restraining Order on January 17, 2022, that returned the School District to a state of universal masking. (Civil Action No. 2:22-cv-00055, ECF No. 16). An interlocutory appeal was filed in the Third Circuit Court of Appeals shortly thereafter, and it was consolidated with an appeal that dealt with the masking policies of another school district in Allegheny County. (United States Court of Appeals for the Third Circuit Docket Nos. 22-1141, 22-1160 and 22-1299).

On February 25, 2022, the Centers for Disease Control and Prevention (CDC) issued revised masking guidance, and Allegheny County was placed in the "low" risk category. In that category, the CDC recommends masking "based on your personal preference, informed by your personal level of risk." *Centers for Disease Control and Prevention, Use and Care of Masks, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html* (last

visited 03/30/22).  On March 1, 2022, the Third Circuit dismissed the appeals at Case Nos. 22-1141, 22-1160 and 22-1299 as moot with instructions that the district courts dismiss without prejudice the complaints as moot.  On March 2, 2022, the case dealing with the universal masking mandate in the School District before Judge Horan (Case Nos. 2:22-cv-00055) was dismissed as moot.  The North Allegheny School District is currently in a state of optional masking.  (ECF No. 27, p. 2).

**B.  Vandervoort's Employment Status**

For the 2020-21 school year, Vandervoort worked from home in the Cyber Academy. However, for the 2021-22 school year, she was told that "Cyber was work from inside a building."  Vandervoort attended a staff meeting on August 17, 2021.  After the meeting, she was approached by the principal and a para-professional union representative and informed that she "must either put on a mask/face shield or go home."  Vandervoort declined the mask that was offered to her.   (ECF No. 17, ¶¶ 54, 56, 58-60).   Vandervoort explained that she, "was uncomfortable wearing a mask because it cause[d] her to suffer distress, to hyperventilate, headaches, dizziness, anxiety and vertigo becoming unstable to the point it cause[d] [her] to fall in the halls or stairwells while walking/guiding a student thru their day at school [. . .]." (*Id.* ¶ 62).   Eventually, Vandervoort left the school building.   Later that day, the Assistant Superintendent of Elementary Education spoke with Vandervoort on the telephone and explained that she "could not refuse a direct order from a supervisor" unless it could cause her harm or put her in danger.  (*Id.* ¶ 64).  This prompted Vandervoort to send a letter to Dr. Friez and the School Board that masks were ineffective, harmful and "only authorized for use by an EUA (emergency use authorization)." (*Id.* ¶ 65) (ECF No. 17-3).

Vandervoort did not report to work for twenty-three days after the staff meeting because she refused to wear a mask inside the school building. Her absence was classified as an "unpaid unexcused absence." When Vandervoort sought to have this absence recategorized as her accrued twenty-six sick days, the School District informed her that she could not do so unless she requested and was approved for FMLA. According to Vandervoort, Defendants forced her to apply for FMLA. On September 14, 2021, the "Benefits Director," contacted Vandervoort "to ask for additional questions regarding the PCP to determine the FMLA," and for further information as to "what specific job duties" she "could not perform due to her diagnosis." (*Id.* ¶ 65-80) (ECF No. 17-8). On the FLMA paperwork she submitted to the School District, Vandervoort's doctor wrote, "she can certainly work from home if that is an option. She has substantial anxiety related to mask-wearing and COVID." (ECF No. 17-7, p. 5). Vandervoort was placed on an approved FMLA leave of absence from August 23, 2021 through December 8, 2021. (ECF No. 27, p. 4).

To the best of the Court's understanding, Vandervoort remains on an unpaid unexcused absence. She alleges that she has received no response from the School District as to how long she will remain in this "forced" state of unpaid leave. (ECF No. 17, ¶ 65-80). Vandervoort refuses to wear a mask and contends it is "unsupported by science," and "results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase." (*Id.* ¶ 99). In its Status Report, the School District has clarified that Vandervoort,

> has not worked since the Commonwealth mandate became effective. Plaintiff
> submitted paperwork to be approved for a leave of absence from August 23, 2021,

7

> through December 8, 2021.  Prior to the expiration of the leave of absence on December 8, 2021, Plaintiff was contacted and requested to provide the District either a release or return to work from her healthcare provider, or documentation from her healthcare provider to support an extension of her leave of absence [from] North Allegheny School District.  As of this Status Report, Plaintiff has not requested additional leave

(ECF No. 27, p. 4).  Thus, since December 9, 2021, Vandervoort has accumulated unapproved unpaid absences.  The School Board has initiated dismissal proceedings against her.  (ECF No. 27, p. 5).

## III.   ANALYSIS

After carefully reviewing the allegations pleaded by Vandervoort and the parties' respective arguments, the Court holds that dismissal of her Amended Complaint is appropriate.

### A. All claims against School Board members Andrew Chomos, Marcie Crow, Libby Blackburn, Kevin Mahler, Richard McClure, Allyson Miton, Scott E. Russell, Elizabeth M.J. Warnen, and Shannon Yeakel in their individual capacity are dismissed.

Vandervoort has sued the School Board members in their individual capacities.  "[L]ocal legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities."  *In re Montgomery County*, 215 F.3d 367, 376 (3d Cir. 2000) (citing *Bogan v. Scott–Harris*, 523 U.S. 44, 49 (1998); *Aitchison v. Raffiani*, 708 F.2d 96 (3d Cir. 1983)).  "To be legislative, however, the act in question must be both substantively and procedurally legislative in nature."  *Id.* (citing *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1996)).  "An act is substantively legislative if it involves 'policy-making of a general purpose' or 'line-drawing.'  It is procedurally legislative if it is undertaken 'by means of established legislative procedures.'"  *Id.* (citing *Carver*, 102 F.3d, at 100).  Other district courts in the Third Circuit have held that this legislative immunity extends to school boards, and the Court concurs. *See, e.g., B.P. by and through L.P. v. North Allegheny School District*, ___F.Supp. 3d ___, 2022

WL 114075, *9 (W.D. Pa. 2022); *Pribula v. Wyoming Area Sch. Dist.*, 599 F. Supp. 2d 564, 579-80 (M.D. Pa. 2009); *Schlegel v. Koteski*, Case No. 2:05-cv-1429, 2007 WL 2823476, at *3 (W.D. Pa. Sept. 26, 2007).

Here, when the School Board members voted to impose a universal masking mandate (and then voted to rescind the mandate), they were acting as local legislators to the School District. The masking mandate was general policy, applicable to the entire School District. Vandervoort cannot prove that the School Board members, in their individual capacity, violated a clearly established statutory or constitutional right. Her claims against the individual School Board members are dismissed on grounds of legislative immunity. The Court would further note that Vandervoort's claims against the individual School Board members in their official capacity are redundant as she has sued the School Board.[2] *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

For these reasons, all claims against School Board members Andrew Chomos, Marcie Crow, Libby Blackburn, Kevin Mahler, Richard McClure, Allyson Miton, Scott E. Russell, Elizabeth M.J. Warnen, and Shannon Yeakel in their individual capacity will be dismissed with prejudice. Because the Court holds that any amendment would be futile,[3] Vandervoort will not be granted leave to amend with regard to her claims against the individual School Board members.

---

[2] Also, Vandervoort has failed to allege any specific personal involvement as to the individual School Board members in the alleged wrongdoing as to her – i.e., the staff meeting, the proposed FLMA leave, or her absence from work that form the basis of Counts IV, V, VI, and VII.

[3] "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2021).

### B. Counts I, II, and VIII against the School Board, the School District and Dr. Friez will be dismissed.

Counts I, II and VIII are brought pursuant to 42 U.S.C. § 1983, which functions as a "vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (quoting 42 U.S.C. § 1983). § 1983 does not create substantive rights by its own terms, but it instead provides remedies for violations of rights that are established elsewhere in the Constitution or in federal law. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under § 1983, two criteria must be met: 1) the conduct complained of must have been committed by a person acting under color of state law; and 2) the conduct must deprive the plaintiff of rights secured under the Constitution or federal law.[4] *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998). Vandervoort wants the School District's universal masking mandate voided and the School District permanently enjoined from implementing or enforcing a masking mandate.

---

[4] The liability of a municipality—in this case, the School Board and School District—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipality cannot be subjected to liability solely because its agents or employees caused injury to another person. *Id.* Rather, a municipal entity may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id.* at 694. An official policy may be established under three circumstances: (1) the municipal entity adopted and promulgated a policy, the implementation of which caused the constitutional deprivation; (2) the policymaker failed to act affirmatively even though the need to take some action is obvious and the inadequacy of the existing practice is likely to result in the violation of constitutional rights; or (3) absent a formal policy, an official with policymaking authority violated federal law, causing the constitutional deprivation. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). As to Dr. Friez, whether a particular official has final policymaking authority for the purposes of § 1983 liability is a question of state law. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010).

In Count I, which is entitled, "Violation of Procedural Due Process (5[th] and 14[th] Amendment)," Vandervoort contends she "has constitutionally protected interests in the benefits that come from being forced to comply and subjected to the Board's mask mandate, causing her the inability to perform without being subjected to health risks that are not offset by any scientifically provable benefits." (ECF No. 17, ¶ 106). Liberally construing her claim, Vandervoort is alleging a violation of due process based on a property interest in continued public employment. In Count II, which is entitled, "Violation of Substance Due Process (Fourteenth Amendment)," Vandervoort fails to identify what substantive due process violation occurred. She claims that she was harmed by "unlawful acts," "by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response [. . .] and, in some cases, a significant blood pressure." (ECF No. 17, ¶ 112). In Count VIII, entitled "Violation of the Fourteenth Amendment State Created Danger," Vandervoort alleges that "the District knew or should have known of Plaintiff's vulnerability after being informed, given her age, and having been previously forewarned of the debilitating symptoms she suffers from being forced to masked [. . .]." (ECF No. 17, ¶ 174). She contends the School Defendants were "forewarned and should have anticipated Plaintiff would have been traumatized by Defendants' action," and that their "behavior for handling Covid-19" exacerbated her "debilitating symptoms." (*Id.* ¶ 175). Vandervoort is alleging a § 1983 substantive due process claim under the "state created danger theory." She alleges that she will be harmed by the universal masking mandate, and that it will exacerbate her "debilitating symptoms." (*Id.*, ¶¶ 107, 112, 175). Ultimately, she requests that the School District's masking mandate be vacated, and the School District be enjoined from enforcing its masking policy. (*Id.*, at p. 40).

11

For the following reasons, Counts I, II and VIII against the School Board, the School District, and Dr. Friez will be dismissed with prejudice.

### 1. Mootness

The Court holds that all claims related to the School District's universal masking mandate – Counts I, II and VIII against the School Board, the School District and Dr. Friez - are moot,[5] and they will be dismissed for the Court's lack of jurisdiction.   All of Vandervoort's claims relating to the universal masking mandate of the School District became moot for reasons outside of the parties' control.   In accordance with the CDC's revised masking guidance, the Third Circuit's Order on March 1, 2022 at Case Nos. 22-1160 and 22-1299, and Judge Horan's Order on March 2, 2022 at Case No. 2:22-cv-00055, the School District has returned to its previous policy of optional masking.  (ECF No. 27, p. 2).  Vandervoort admits that "the masking policy is over."  (ECF No. 28).   Because the universal masking mandate has expired in the School District, there is no relief the Court can grant Vandervoort.   *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996).

In the Third Circuit's March 1, 2022 Order at Case Nos. 22-1160 and 22-1299, it held that "for essentially the same reasons we explained in *County of Butler v. Governor of Pennsylvania*, 8 F.4th 226 (3d Cir. 2021), the exception [for questions "capable of repetition yet evading review"] does not apply."   In other words, the Third Circuit refused to address the underlying constitutional claims brought by litigants challenging masking mandates in school districts.  Here, the Court is extremely reluctant to do so.  However, because of Vandervoort's

---

[5] Article III of the Constitution limits federal judicial power to actual cases or controversies.  "If at any point a claim ceases to present a live case or controversy, the claim is moot and the federal court lacks jurisdiction to hear it."  *Nextel West Corp. v. Unity Twp.*, 282 F.3d 257, 261 (3d Cir. 2002).  "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003).

*pro se* status and the confusing nature of her § 1983 claims, it offers her the following explanation as to why Counts I, II and VIII would not survive School Defendants' motion to dismiss.

### 2. Count I

In Count I, Vandervoort alleges a violation of due process based on a property interest in continued public employment. In order to state a claim under § 1983 for deprivation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). As the United States Supreme Court has explained, "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Thus, the Court cannot skip its analysis of an allegedly protected interest and simply conclude that a party has a right to due process. *See Dunkel v. Mt. Carbon/North Manheim Fire Co.*, 970 F. Supp. 2d 374, 381 (M.D. Pa. 2013). "Rather, the court must first determine 'whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property.'" *Id.* (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 194 (3d Cir. 2009) (additional citation omitted)). Here, Vandervoort has not pled a plausible procedural due process claim with respect to deprivation of property.

Before a government employee, like Vandervoort, can succeed on a procedural due process claim, the employee must establish a constitutionally protected property right. *Mancini v. Northampton Cty.*, 836 F.3d 308, 315 (3d Cir. 2016). School Defendants concede that

Vandervoort has pled an enforceable property right to employment. (ECF No. 19, p. 14). Therefore, the next question is whether the available procedures provided due process of law. Procedural due process is a flexible inquiry, based on the circumstances. When an employer does less than discharge the employee, it can provide less process and still comply with the Constitution. *See Gilberg v. Homar*, 520 U.S. 924, 932 (1997). To determine what process is constitutionally due, courts must balance three factors: the private interest affected by the official action; the risk of an erroneous deprivation of such an interest through the procedures used; and the government's interest. *Id.* at 931-32 (quotation omitted).

Here, the facts pled allow the Court conclude that what occurred–which was not the termination of Vandervoort's employment–was that the School District prohibited her from school property because she refused to comply with the mask mandate and permitted her to take FMLA leave. The Court finds that the School District provided Vandervoort with sufficient due process. The School District had multiple conversations with Vandervoort about its masking mandate, gave her the opportunity to take FLMA, and she was placed on FMLA leave from August 23, 2021 through December 8, 2021. Consequently, the pre-deprivation procedures were sufficiently robust. The Court would be remiss not to observe that the School District has an interest in disciplining its employees who refuse to abide by school policies relatively promptly, without full-blown hearings that will be expensive, time-consuming, and diminish the value of the punishments by making them temporally remote from the conduct in question. Thus, under the circumstances, the Court finds that the School District's process was sufficient. Vandervoort has failed to advance a legally viable procedural due process claim.

### 3.   Count II

In Count II,  Vandervoort fails to specifically state what substantive due process violation

occurred.    Substantive due process protects only certain "fundamental" liberty interests.

*Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  Public employment is not a fundamental

interest entitled to substantive due process protection.  *See Nicholas v. Pennsylvania State Univ.*,

227 F.3d 133, 142-43 (3d Cir. 2000).  Thus, Vandervoort's public employment with the School

District is not a fundamental interest under the U.S. Constitution, and she cannot state a

substantive due process claim on this basis.

However, the 14th Amendment, under which Vandervoort seemingly bases her claim,

prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of

law." U.S. Const. amend. XIV, § 1.  "To prevail on a substantive due process claim, a plaintiff

must prove that she has a 'fundamental' liberty interest implicating Fourteenth Amendment

protection and that a defendant's conduct [concerning] said interest was 'so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Kobrick v.*

*Stevens*, Case No. 3:13-cv-2865, 2017 WL 3839946, *6 (M.D. Pa. 2017) (citing *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  The Supreme Court has held that "the

'liberty' specially protected by the Due Process Clause includes the right[ ] ... to bodily integrity,

*Rochin v. California*, 342 U.S. 165 [ ] (1952)," *Washington*, 521 U.S. at 720, but the closest the

Supreme Court has come to holding that there is a right for a person to make his own medical

decisions is its decision that "a competent person has a constitutionally protected liberty interest

in refusing unwanted medical treatment."  *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497

U.S. 261, 278 (1990) (emphasis added); *See also Washington*, 521 U.S. at 720 ("the Due Process

Clause protects the traditional right to refuse unwanted lifesaving medical treatment").

Vandervoort alleges that the School District's masking policy forced unwanted bodily intrusion and unwanted medical treatment upon her. The Court disagrees. She has not plausibly set forth a claim remotely similar to those addressed in the precedent cited above—which addresses the refusal of medical treatment. Nor has she convincingly tied her claims into the considerations addressed in the broader body of federal case law dealing with substantive due process. Vandervoort has failed to state a claim for deprivation of substantive due process.

### 4. Count VIII

In Count VIII, Vandervoort alleges a § 1983 substantive due process claim under the "state created danger theory." As already noted, the Due Process Clause "is a limitation on the state's power to act, but it does not 'impose an affirmative obligation on the State to ensure that those life, liberty, and property interests do not come to harm through other means.'" *Luu v. Esterly*, 367 F. Supp. 3d 335, 342 (E.D. Pa. 2019) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). The Third Circuit's four-part test outlines the requirements of a state-created danger claim: "(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted with willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

Under the first prong of the Third Circuit's state created danger test, Vandervoort had to plead facts in her Amended Complaint to show that the harm ultimately caused to her was foreseeable and fairly direct. To adequately plead foreseeability under this standard, Vandervoort had to "allege an awareness on the part of the state actors that rises to the level of actual knowledge or awareness of risk that is sufficiently concrete to put the actors on notice of

the harm." *Id.* at 237.   Additionally, the risk of irreparable harm alleged must not be speculative. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).

The ability to analyze this element is hindered by the confusing nature of the allegations in the Amended Complaint regarding the harm suffered.   Vandervoort states that she "was harmed, and continues to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some case, a significant blood pressure increase." (ECF No. 17, pp. 31-32).   The harm foreseeable by Vandervoort, as being a direct consequence of the School Defendants' universal masking mandate (which is no longer in place), is not expressly or sufficiently pled.   Additionally, the Amended Complaint contains no allegations of any harm that actually occurred.   Vandervoort's allegations do not satisfy the first element of the state-created danger test to support a claim for a substantive due process violation.

Under the second element of the state created danger test, Vandervoort must demonstrate that the state actor, the School Defendants, acted with a degree of culpability that shocks the conscience and sufficiently allege that they acted in willful disregard for or with deliberate indifference to her safety.   *Morrow v. Balaski*, 719 F.3d 160, 176 (3d Cir. 2013).   Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Cmm'rs v. Brown*, 520 U.S. 397, 410, (1997) (citation omitted).

Vandervoort cannot demonstrate that the School Defendants acted with willful disregard for her safety when it imposed a universal mask mandate (and then later rescinded the mask mandate).   Masking in schools is now a moot point.   Even beforehand, however, the Court

cannot accept that the School Defendants' enforcement of universal masking as mandated by the PADOH demonstrates a willful disregard for Vandervoort's safety, particularly where the School District permitted her leave under the FMLA.

As Vandervoort's Amended Complaint does not sufficiently satisfy either the first or the second prong of the state-created danger test, there is no need to discuss the other prongs. She has not set forth a viable substantive due process claim under the "state created danger theory."

### 5. Leave to Amend Will be Denied

Any amendment of Counts I, II and VIII against the School Board, the School District and Dr. Friez would be futile in the eyes of the Court due to mootness and because Vandervoort cannot state a viable claim for relief. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility).

### C. Counts IV, V, VI, and VII against the School Board, the School District and Dr. Friez will be dismissed.

In Counts IV, V, VI, and VII, Vandervoort alleges that the School District's mask mandate and School Defendants' enforcement of it interfered with her employment rights. She brings her claims under the ADA, Title VII, and the PHRA. Based on the Court's review of Vandervoort's Status Report, it seems these are now the claims she is pursuing. (ECF No. 28). For example, she states, "Defendants are threatening Plaintiff livelihood and are planning on dismissing Plaintiff's employment by reason of which all has stemmed from her physical condition after many request for a reasonable accommodation." (ECF No. 28, p. 1). She clarifies, "Plaintiff seeks a judicial declaration that proceedings with the imposition of the threatened employment sanction is a violation of the ADA and seek and order restraining and enjoying [sic] Defendants from violation of the ADA by employment sanction on the basis

perceived physical disability." (*Id.*, at p. 2). Vandervoort acknowledges that the masking policy is "over," but she contends that while it was in place, the School District "repeatedly, ignored and denied Plaintiff a reasonable accommodation, forced Plaintiff to use on [sic] FMLA, have tried to coerced, threatened and now retaliating as a means to conceal their action and protect themselves from being held accountable and liable." (*Id.*, at p. 4).

Both Title VII and the PHRA require the exhaustion of administrative remedies prior to the filing of a lawsuit.[6] *See* 42 U.S.C. § 2000e-5(b), (f)(1); 43 P.S. §§ 959, 962; *see also Burgh*, 251 at 469; *Bailey v. Storlazzi*, 729 A.2d 1206, 1214 (Pa. Super. 1999). To do so, a complainant must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). *See Burgh*, 251 F.3d at 469, 471. That charge must be filed with the PHRC within 180 days of the last discriminatory act, *see* 43 P.S. § 959(h), and with the EEOC within 300 days of the last discriminatory act (so long as the charge was properly cross-filed with the state agency), *see* 42 U.S.C. § 2000e-5(e)(1). A particular claim is deemed exhausted if it is "fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).[7] This is a

_____

[6] The Court considers Vandervoort's Title VII and PHRA claims together. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) ("We construe Title VII and the PHRA consistently."); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) ("The analysis of [Title VII and PHRA] claims is identical."); *Bailey v. Storlazzi*, 729 A.2d 1206, 1211 n.6 (Pa. Super. 1999) ("The PHRA is generally applied in accordance with Title VII.").

[7] Though *Simko* involved a claim under the Americans with Disabilities Act ("ADA"), that statute expressly incorporates the administrative procedures of Title VII, including Title VII's exhaustion requirement. *See* 42 U.S.C. §§ 12117(a), 2000e-5; *see also Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999).

"highly fact specific" inquiry, and courts must "careful[ly] examin[e] . . . the nature of the relevant claims." *Id.*

Likewise, plaintiffs must exhaust their administrative remedies before filing an ADA claim in federal court. *See Churchill*, 183 F.3d at 190 (noting that claims asserted under the ADA must be filed in adherence with the administrative procedures set forth in Title VII); 42 U.S.C. §§ 12117(a), 2000e-5.5. In Pennsylvania, an aggrieved party must initiate this pre-suit procedure by filing a charge with the EEOC within 300 days of the challenged employment action. *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000); 42 U.S.C. § 2000e-5(e)(1). Thus, the exhaustion requirements under the ADA mirror those under Title VII. *Churchill*, 183 F.3d at 190.

Vandervoort failed to plead in her Amended Complaint that she satisfied the pre-suit requirements of Title VII, the PHRA and the ADA. Furthermore, Vandervoort does not dispute School Defendants' argument that she failed to exhaust administrative remedies. (ECF Nos. 21 and 28). It was only recently, on March 10, 2022, that Vandervoort filed a complaint with the PHRC and EEOC, and the School District's Response is not due until April 8, 2022. (ECF No. 27, p. 5). Because Vandervoort failed to exhaust her administrative remedies for her employment discrimination claims, Counts IV, V, VI, and VII against the School Board, the School District and Dr. Friez will be dismissed without prejudice to pursue relief later in federal court after her administrative remedies are exhausted.

### D. Count III will be dismissed.

Because the Court is dismissing all of Vandervoort's federal claims, there is no longer a basis for the exercise of federal question jurisdiction. When a district court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), it has the discretion to exercise or

decline to exercise this jurisdiction. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003). The statute provides that a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Since the Court has dismissed all of the federal law claims against School Defendants and the remaining claims contained in Count III involve state law, judicial economy, convenience, and fairness to the parties weigh against the Court retaining supplemental jurisdiction. There are no "extraordinary circumstances" which warrant the exercise of jurisdiction over the state claims. The Court declines to exercise supplemental jurisdiction. Vandervoort's pendent state law claim will be dismissed without prejudice to raise in state court.

## IV.   CONCLUSION

For the aforementioned reasons, School Defendants' motion will be granted, all claims against School Defendants will be dismissed, and this case will be closed. All of Vandervoort's claims against the individual School Board members will be dismissed with prejudice. Counts I, II, and VIII against the School Board, the School District and Dr. Friez will be dismissed with prejudice. Counts IV, V, VI, and VII against the School Board, the School District and Dr. Friez will be dismissed without prejudice for Vandervoort to pursue relief after her administrative

remedies are exhausted.   Count III, Vandervoort's pendent state law claim, will be dismissed without prejudice for her to raise in state court.   Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_____3/30/22_____
Dated